UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHARLES M. CROONS,

                              Plaintiff,

        -v-                                            6:10-CV-1277

NEW YORK STATE OFFICE OF MENTAL
HEALTH, CENTRAL NEW YORK
PSYCHIATRIC CENTER; DONALD SAWYER,
Executive Director; DEBBIE COLLVER;
SHARON M. SCHOEN; JOHN DOES;
JANE DOES; PATRICIA L. BARDO; and
COREY CONLEY,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

BOSMAN LAW OFFICE                            AJ BOSMAN, ESQ.
Attorneys for Plaintiff                      DANIEL W. FLYNN, ESQ.
6599 Martin Street
Rome, NY 13440

HON. ERIC T. SCHNEIDERMAN                    MICHAEL G. MCCARTIN, ESQ.
Attorney General for the State of New York   Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224


DAVID N. HURD
United States District Judge

## **TABLE OF CONTENTS**

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. Croons' Injury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B. Croons' Termination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C. Croons' Reinstatement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A. Motion for Summary Judgment—Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . 11

    B. Race Discrimination Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        1. Light Duty. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        2. Termination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    C. Retaliation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    D. Disability Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

<u>**MEMORANDUM–DECISION and ORDER**</u>

**I. <u>INTRODUCTION</u>**

Plaintiff Charles M. Croons ("plaintiff" or "Croons") brings this action against the New York State Office of Mental Health's Central New York Psychiatric Center ("CNYPC"); Donald Sawyer, the former Executive Director of CNYPC ("Sawyer"); Debbie Collver, a Human Resources ("HR") secretary at CNYPC ("Collver"); Sharon Schoen, a retired HR secretary formerly employed at CNYPC ("Schoen"); and John and Jane Does (the "Does"). Plaintiff later amended his complaint to add defendants Patricia Bardo, Director of CNYPC's HR Department ("Bardo") and Corey Conley, the Director of CNYPC's Security Department ("Conley").

Croons' Amended Complaint enumerates fourteen causes of action for alleged violations of federal and state law. Plaintiff brings claims against CNYPC for race and disability discrimination (Counts One, Three, Four, and Five) as well as retaliation (Counts Nine, Ten, and Eleven) pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), Titles I and II of the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act of 1973 ("Rehabilitation Act"). Plaintiff also brings claims against Sawyer, Collver, Schoen, Bardo, Conley, and the Does (collectively the "individual defendants") for race discrimination and retaliation (Counts Eight and Thirteen) as well as alleged violations of the First and Fourteenth Amendments (Counts Seven and Fourteen) pursuant to 42 U.S.C. §§ 1981 and 1983. Finally, plaintiff brings claims against the individual defendants for race and disability discrimination (Counts Two and Six) as well as retaliation (Count Twelve) pursuant to New York State Human Rights Law ("NYSHRL").

Following the completion of discovery, CNYPC and the individual defendants (collectively "defendants") moved for summary judgment on all fourteen causes of action pursuant to Federal Rule of Civil Procedure ("Rule") 56. The motion was fully briefed. Oral argument was heard on September 27, 2013, in Utica, New York. Decision was reserved.

## II.  FACTUAL BACKGROUND

CNYPC is a mental health treatment facility administered by the Office of Mental Health ("OMH"), an agency of the Executive branch of the New York State government. See Defs.' Statement of Material Facts, ECF No. 39-47, ¶ 1 ("Rule 7.1 Stat.").[1]  In 2006, CNYPC hired Croons, an African-American male, as a Security Hospital Treatment Assistant ("SHTA"). Id. ¶ 7; Croons Aff., ECF No. 41, ¶¶ 3-4.  SHTAs supervise potentially violent patients, including the criminally insane, and are often required to use physical force while on duty.  Rule 7.1 Stat. ¶ 8.  For example, SHTAs must respond to "red dot" alerts throughout the facility—violent situations where other CNYPC personnel need assistance restraining a patient.  Id. ¶¶ 8-9; McCartin Decl., Ex. A, ECF No. 39-3, 17 ("Croons' First Dep.").[2]

### A.  Croons' Injury

On June 1, 2007, Croons was on duty at CNYPC when he was alerted to one of these "red dot" situations.  Rule 7.1 Stat. ¶ 9.  In his haste to arrive at the scene of the alert, plaintiff collided with a doorframe, injuring his shoulder and neck.  Id. ¶ 10; Croons' First Dep. 19-21.  Although he was still able to work a full eight-hour day, plaintiff's injury prevented him from lifting heavy objects with his right arm or restraining violent people, as required of

---

[1]  Facts cited from defendants' Statement of Material Facts have been admitted by plaintiff in corresponding paragraphs of his response to same.  ECF No. 45.

[2]  Specific page numbers cited in this decision reflect the pagination assigned by CM/ECF.

SHTAs.  Id. ¶ 17.  Plaintiff was placed on leave in accordance with the terms of a contract between his Union, the New York State Correctional Officers & Police Benevolent Association, Inc. (the "Union"), and New York State.[3]  Id. ¶¶ 12-13.

An injured CNYPC employee placed on Union leave, such as Croons, is eligible to return to work in a "light duty" capacity prior to making a full recovery subject to certain restrictions established as part of a Memorandum of Understanding ("MOU") between New York State and the Union.[4]  Rule 7.1 Stat. ¶¶ 27-28; Bardo Decl., Ex. A, ECF No. 39-16, 3. The employee seeking light duty must provide CNYPC's HR Department with medical documentation detailing his or her particular work restrictions as well as a doctor's statement indicating the employee is expected to recover and be prepared for "full duty" within forty-five days or less.  Rule 7.1 Stat. ¶ 51.  Once an injured employee supplies the requisite documentation, an HR secretary contacts the appropriate CNYPC department, usually by telephone or e-mail, to determine if a light duty position is available.  Id. ¶ 52; see also Sawyer Decl., ECF No. 39-14, ¶ 8; Conley Decl., ECF No. 39-22, ¶ 5; Schoen Decl., ECF No. 39-23, ¶ 4.

---

[3] This Union agreement provides that an employee like Croons, who was injured on the job (but not by an actual physical assault from a patient) was entitled to a regressive series of payments during the period of his continuing injury:  (1) six months of full pay; (2) continuing full pay during which time any accruals and annual leave were exhausted; (3) half pay during which time the worker's sick leave was exhausted; and finally (4) pay from New York State's insurance fund.  Schoen Decl., Ex. D, ECF No. 39-27.

[4] This MOU requires that all light duty assignments fall within the appropriate "title," or description of job duties, found in the New York Civil Service Law associated with the position held by the injured employee. Rule 7.1 Stat. ¶ 29.  It also limits a light duty assignment to "the duration of the [injured employee's] disability, or 45 days, whichever [is] less" and provides that these assignments will be "identified and assigned" by CNYPC management.  Id. ¶¶ 32, 35.

### B. **Croons' Termination**

After he was placed on Union leave, Croons underwent a series of medical evaluations by different physicians to determine his fitness to return to full duty.  Rule 7.1 Stat. ¶¶ 19-24. These evaluations, conducted largely between September 21, 2007, and July 11, 2008, characterized plaintiff's injury as "moderate," "temporary," "partial," and "mild."  Id.; see also McCartin Decl., Ex. 1, ECF No. 39-6 ("Medical Records").  Each of these evaluations indicated that although plaintiff could return to work in a light duty capacity, he could not be in a "potentially violent environment" and was restricted from lifting various weights with his injured right arm.  See generally Medical Records.

On January 16, 2008, James Schuster, M.D. completed an "Estimated Capabilities Report," which stated that Croons could work an eight-hour day, but was still restricted from pushing or pulling with his right arm or restraining combative patients. Rule 7.1 Stat. ¶ 23; see Croons Aff., Ex. B, 34.  Notably, Dr. Schuster's report indicated that plaintiff would be ready to return to full duty on March 1, 2008, within the forty-five day period required by the MOU for clearance to light duty.  Id.  However, a later "work ability report," completed by plaintiff's personal physician Nathaniel Gould, M.D. on March 3, 2008, indicated plaintiff was still limited from lifting more than ten pounds with his right arm, could not be in a "potentially violent environment," and that plaintiff should follow-up with him in six weeks.  Medical Records 15. Plaintiff did not receive any light duty assignments at CNYPC during this period and remained on continuous Union leave.  Rule 7.1 Stat. ¶ 16.

On June 12, 2008, CNYPC sent Croons a letter informing him that his employment would be terminated on July 13, 2008 pursuant to New York Civil Service Law § 71.  Rule 7.1 Stat. ¶ 69; McCartin Decl., Ex. 3, ECF No. 39-7.  Section 71 provides, in relevant part, that

"[w]here an employee has been separated from the service by reason of a disability resulting from occupational injury . . . [he] shall be entitled to a leave of absence for at least one year, unless [his] disability is of such a nature as to permanently incapacitate [him] for the performance of the duties of [his] position."  N.Y. Civ. Serv. Law § 71.

On July 11, 2008, Dr. Gould completed a "work ability report" indicating that Croons could return to full duty on August 4, 2008, again within the forty-five day period required by the MOU for clearance to light duty.[5]  Medical Records 25.  However, plaintiff did not work any light duty on July 11 or 12, and on July 13 he was terminated.  See Rule 7.1 Stat. ¶ 74; Medical Records 21, 24 (noting that "patient reports he was laid off for being on light duty too long).  Shortly thereafter, New York State instituted a state-wide hiring freeze.[6]

Following his termination, Croons pursued reinstatement under other provisions of the Civil Service Law, which provide that an employee who has been terminated pursuant to § 71, such as plaintiff, can apply to be examined by a physician from the New York State Department of Civil Service ("Civil Service") Staffing Services Division, the central personnel agency of the Executive branch of New York State.  Rule 7.1 Stat. ¶¶ 74, 76; Ryan-Lynch Decl., ECF No. 39-41, ¶ 2.  If the employee can show that his injury has healed and he is fit to return to work without limitations, a medical clearance letter is transmitted to the relevant facility, such as CNYPC, to begin a reinstatement process.  Ryan-Lynch Decl. ¶ 9.

_____

[5]  Plaintiff admits that this July 11 medical report from Dr. Gould is the first time he was told by his personal doctor that he would be able to return to work in a full-duty capacity.  Croons' First Dep. 57-58.

[6]  Croons denies the existence of this hiring freeze as "not material," ostensibly because defendants later secured a "budgetary waiver" in attempting to reinstate plaintiff as an SHTA while the hiring freeze was in effect.  See Response to Rule 7.1 Stat., ECF No. 45, ¶¶ 88-89.  CNYPC has provided evidence of the existence of this hiring freeze in the form of both sworn affidavits and the hiring freeze bulletins themselves.  See Bardo Decl., Ex. B, ECF No. 39-17 ("2008 Budget Bulletin"); see also Bardo Decl., Ex. C, ECF No. 39-18 ("2009 Budget Bulletin").  Plaintiff has provided no evidence to place the existence of this fact in dispute.

In February 2009, Croons reported to the Civil Service's Employee Health Services ("EHS") office, where he was evaluated by John E. Hargraves, M.D. Rule 7.1 Stat. ¶¶ 77-78. On February 11, 2009, Dr. Hargraves issued a letter clearing plaintiff to return to work as an SHTA without restrictions. Id. ¶ 78; Ryan-Lynch Decl., Ex. A, ECF No. 39-42 ("Clearance Letter"). This Clearance Letter indicated that it was "cc'ed" to both "Staffing Services – Director" and "[CNYPC], Personnel." Rule 7.1 Stat. ¶ 79.

For reasons the parties dispute, CNYPC did not reinstate Croons following his medical clearance.[7] However, what is certain is that plaintiff filed an administrative complaint with the New York State Division of Human Rights ("DHR") alleging discrimination and retaliation on June 26, 2009, which was later cross-filed with the United States Equal Employment Opportunity Commission ("EEOC"). Bosman Aff., Ex. 1, ECF No. 44-1, 2-8. On December 1, 2009, a "two party" telephone conference was held between DHR and CNYPC to discuss plaintiff's administrative complaint. Bosman Aff., Ex. 2, ECF No. 44-1, 10-11. On October 25, 2010, plaintiff filed this lawsuit.

### C. Croons' Reinstatement

During the pendency of this litigation, CNYPC applied for a "budgetary waiver" to reinstate Croons despite the hiring freeze. Rule 7.1 Stat. ¶ 93. In August 2011, New York State approved CNYPC's budgetary waiver application and plaintiff was directed to report to EHS for a physical exam and drug test prior to being reinstated as an SHTA. Rule 7.1

---

[7] Defendants contend that, for reasons unknown, the usual business practices regarding reinstatement were not followed and CNYPC did not become aware of the Clearance Letter until this lawsuit was filed. They further contend that even if it had been properly received, the state-wide hiring freeze would have precluded his immediate reinstatement. Plaintiff denies this and contends that not only did he personally deliver a copy of the Clearance Letter to CNYPC, but that it was also discussed during the "two party" telephone conference held on December 1, 2009.

Stat. ¶¶ 93-94; Bardo Decl., Ex. D, ECF No. 39-19.  However, plaintiff was initially deemed ineligible for reinstatement when his urine tested positive for marijuana.[8]  Bardo Decl., Ex. E, ECF No. 39-20; Ciulla Decl., Ex. C, ECF No. 39-40.  While discovery in this matter continued, CNYPC attempted to reinstate plaintiff a second time.  Bardo Decl. ¶ 19.  After passing a second drug test and physical exam, plaintiff finally returned to work at CNYPC as an SHTA on November 1, 2012.  Rule 7.1 Stat. ¶¶ 109-10; McCartin Decl., Ex. B, ECF No. 39-4, 39-40 ("Croons' Second Dep.").  He has since testified that there have been no incidents of race or disability discrimination since his return.  Rule 7.1 Stat. ¶ 111.

## III.  **DISCUSSION**

Each of the fourteen causes of action asserted in Croons' Amended Complaint incorporates all of the factual allegations preceding it as well as adopting all of the allegations of each preceding count.  Consequently, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996).  The initial confusion undoubtedly caused by this "shotgun pleading" strategy was only exacerbated by defendants' decision not to move against either plaintiff's initial or amended complaint seeking clarification of the issues.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 590 n.9 ("The remedy for an allegation lacking sufficient specificity to provide adequate notice is, of course, a Rule 12(e) motion for a more definite statement.") (Stevens, J., dissenting) (internal quotations omitted).

---

[8] Croons denies this as "not material," and further asserts that this drug test and physical should not have been required prior to his reinstatement.  Defendants have adduced evidence that such testing is standard policy for reinstatement of an employee who has been terminated pursuant to § 71.  See generally Ciulla Decl., ECF No. 39-37.  In any event, plaintiff admits that SHTAs must pass a drug test in order to receive employment from CNYPC.  Croons' Second Dep. 15.  He also admits to having consumed marijuana. Id. 20-23.

Instead, the parties elected to sort things out by engaging in a protracted course of sweeping discovery spanning several years before delivering this motion for consideration.

But this is exactly backwards. "Civil pleadings are supposed to mark the boundaries for discovery; discovery is not supposed to substitute for definite pleading." Paylor v. Hartford Fire Ins. Co., — F.3d —, No. 13-12696, 2014 WL 1363544, at *7 (11th Cir. Apr. 8, 2014). And left unchecked, this type of litigation strategy ultimately acts to thwart meaningful legal analysis. This is especially true where, as here, the parties can barely seem to agree on even the most inconsequential background facts in the case. Left with little in the way of useful guidance on the critical disputes, a court must instead attempt to stitch together the plaintiff's various theories of recovery by slogging through the inevitable morass of discovery materials. The result is a "massive waste of judicial and private resources." Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc., 162 F.3d 1290, 1333 (11th Cir. 1998). Indeed, "[e]xperience teaches that, unless cases are [pleaded] clearly and precisely, . . . discovery is not controlled, the trial court's docket becomes unmanageable, [and] the litigants suffer[ ]." Anderson, 77 F.3d at 366.

The repercussions of Croons' "successful" shotgun pleading strategy are readily apparent from a review of the docket in this action—when the dust settled on the briefing in this case, the parties' exhibits, declarations, affirmations, and excerpted depositions comprised nearly one-thousand pages of material for consideration.[9] Faced with a panoply of claims and buried in what can fairly be described as a mountain of documents, assessing the

---

[9] Defendants initially requested leave to file an overlong brief because "up to [ten] additional pages" were "essential" to "properly address" plaintiff's claims. ECF No. 37. Plaintiff then littered the docket with affidavits before requesting additional time to respond in opposition. ECF No. 46. Of course, it comes as no surprise that defendants also required leave to file an overlong reply. ECF No. 50.

viability of plaintiff's case seems a herculean task, one that is further complicated by plaintiff's decision to respond only to some of defendants' arguments and cited authorities while completely ignoring others.[10]

Nevertheless, a thorough review of the voluminous filings reveals that Croons' various causes of action, drawn from the contours of his three-act employment saga, are based on: (1) defendants' failure to provide him a light duty assignment following his injury; (2) his termination; and (3) defendants' failure to promptly reinstate him following his medical clearance.

## A. <u>Motion for Summary Judgment—Legal Standard</u>

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248; <u>see also</u> <u>Jeffreys v. City of N.Y.</u>, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to

---

[10] The parties have also elected to continuously refer to the various named defendants in this action in only general terms despite that fact that certain of the federal statutes under which plaintiff brings his claims provide individual liability while others foreclose it. This analysis will follow the parties' lead and adopt the general term "defendants" to analyze each claim except where pertinent facts have been identified as being related to a particular defendant or defendants.

any essential element of the claim.  Id. at 250 n.4.  The failure to meet this burden warrants denial of the motion.  See id.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the non-moving party.  Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citations omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

"It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases," and that "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to . . . other areas of litigation."  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (internal quotation omitted).  Therefore, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.' . . . [He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor."  Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

A plaintiff's "[m]ere conclusory statements, conjecture or speculation" will not defeat summary judgment.  Gross v. Nat'l Broad. Co., Inc., 232 F.Supp.2d 58, 67 (S.D.N.Y.2002); see also Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir.2008) ("Even in the discrimination

context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."). Instead, a plaintiff must offer "concrete particulars." Bickerstaff v. Vassar Coll., 196 F.3d 435, 451-52 (2d Cir.1999) (disregarding plaintiff's affidavit because it lacked "concrete particulars"); Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases.").

With this framework in mind, it bears noting that "direct evidence of . . . [discriminatory] intent will only rarely be available, so . . . 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination.'" Holcomb, 521 F.3d at 137 (internal citation omitted). However, this cautious attitude toward summary judgment in the employment discrimination context cannot excuse a court's obligation to "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." Bickerstaff, 196 F.3d at 448.

## B. Race Discrimination Claims (Counts One, Two, Seven, and Eight)

Croons' various race discrimination claims are brought pursuant to Title VII (Count One), the NYSHRL (Count Two), and 42 U.S.C. §§ 1981 and 1983 (Counts Seven and Eight). Plaintiff challenges two related employment actions: (1) defendants' failure to provide him light duty assignments during the period he was on Union leave; and (2) his termination effective July 13, 2008.

Defendants contend Croons has failed to establish a prima facie case of race discrimination with regard to either action. Defs.' Mem. 18-19. Plaintiff's opposition

memorandum does little to clarify his theory of recovery or otherwise respond to defendants' arguments, but rather summarily concludes that defendants' assertions are a pretext for discrimination.  See Pl.'s Mem. Opp'n 8-9.

As an initial matter, Croons argues defendants have "erroneously construed" his burden at this stage of the litigation and suggests that his discrimination claims are not subject to the McDonnell Douglas "burden-shifting" framework, see Pl.'s Mem. 6 (citing Henry v. Wyeth Pharm., Inc.,616 F.3d 134 (2d Cir. 2010)), but plaintiff's reliance on Henry is misplaced.  In Henry, the Second Circuit addressed a challenge to a district court's inclusion of elements of the McDonnell Douglas burden-shifting framework into its jury charge.  See 616 F.3d at 153. Although it ultimately held that the jury charge was not reversible error, the Henry Court cautioned that the McDonnell Douglas framework was formulated for use by judges in determining whether a case should go to a jury and would not be helpful to the fact-finder in making its ultimate determination of whether plaintiff had "proved by a preponderance of the credible evidence that his race or color was a motivating factor in certain employment actions."  Id. at 154 (citation and internal quotation marks omitted).

Here, a denial of defendants' motion for summary judgment on any or all of Croons' claims would merely necessitate a trial that might ultimately result in submitting the case to a jury and it is therefore entirely unclear as to why plaintiff believes the McDonnell Douglas framework is inapplicable at this stage of the litigation.

Indeed, it is well-settled that employment discrimination claims brought pursuant to Title VII, the NYSHRL, and 42 U.S.C. §§ 1981 and 1983 are all subject to the same substantive,

burden-shifting framework.[11] <u>Vivenzio v. City of Syracuse</u>, 611 F.3d 98, 106 (2d Cir. 2010);

<u>Pilgrim v. McGraw-Hill Cos., Inc.</u>, 599 F. Supp. 2d 462, 468 (S.D.N.Y. 2009) ("[T]he standard

for all Title VII, section 1981, [and NYSHRL] employment discrimination claims is the same.");

<u>Ghent v. Moore</u>, 519 F. Supp. 2d 328, 334 (W.D.N.Y. 2007) (noting that discrimination claims

brought pursuant to §§ 1981 and 1983 as well as the NYSHRL are subject to the same

analysis as Title VII claims); <u>Magee v. Nassau County Med. Ctr.</u>, 27 F. Supp. 2d 154, 161

(E.D.N.Y. 1998) ("The same substantive legal framework applies to racial discrimination

claims regardless of whether they are considered under Title VII or § 1983.").

    This framework places the initial burden of establishing a prima facie case of

discrimination on the plaintiff, who must demonstrate that:  (1) he is a member of a protected

class; (2) he was qualified for the position in question; (3) he suffered an adverse

employment action; and (4) the adverse action took place under circumstances giving rise to

an inference of discrimination.  <u>Ruiz v. Cnty. of Rockland</u>, 609 F.3d 486, 491 (2d Cir. 2010).

While this burden has been characterized as "minimal," the plaintiff must still "proffer some

admissible evidence of circumstances that would permit an inference of discriminatory

motive." <u>Risco v. McHugh</u>, 868 F. Supp. 2d 75, 98-99 (S.D.N.Y. 2012).

    The burden then shifts to the defendant to offer "legitimate and non-discriminatory

reasons for the adverse employment action demonstrated in plaintiff's prima facie case." <u>Id</u>.

at 99 (citing <u>Abdu-Brisson</u>, 239 F.3d at 468).  The burden at this stage is also "light," and

---

    [11] The major difference between Title VII and these other statutes is that "in certain circumstances a Title VII claim may be established through proof of a defendant's mere negligence, without a showing of discriminatory intent," whereas "a plaintiff pursuing a claimed violation of § 1981 or denial of equal protection under § 1983 must show that the discrimination was intentional."  <u>Ghent v. Moore</u>, 519 F. Supp. 2d 328, 334 (W.D.N.Y. 2007) (citation omitted).  Likewise, although individuals may not be held personally liable under Title VII, individual liability may arise under the NYSHRL as well as §§ 1981 and 1983 if a plaintiff shows that the individual defendants were personally involved or participated in the violation.  <u>Id</u>. at 335.

"[t]he employer need not persuade the court that it was motivated by the reason it provides; rather it must simply articulate an explanation that, if true, would connote lawful behavior." Id. (citations and emphasis omitted). Importantly, "[t]his burden is one of production, not persuasion; it 'can involve no credibility assessment.'" Id. (citations omitted).

The burden then remains with the plaintiff to produce sufficient evidence to cast doubt on the defendant's legitimate, non-retaliatory reasons. Sharpe v. Utica Mut. Ins. Co., 756 F. Supp. 2d 230, 249 (N.D.N.Y. 2010). "Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Risco, 886 F. Supp. 2d at 99 (quoting Reeves, 530 U.S. at 143).

Notably, "in order to raise an issue of fact that is sufficiently material to defeat a motion for summary judgment, the plaintiff must produce more than simply some evidence; it must be enough evidence to support a rational finding that the defendant's explanation for the adverse action is actually a pretext to disguise discrimination." Barounis v. N.Y.C. Police Dep't, No. 10 Civ. 2631(SAS), 2012 WL 6194190, at *6 (S.D.N.Y. Dec. 12, 2012) (citations omitted). In other words, a plaintiff must do "more than cite to [his] mistreatment and ask the court to conclude that it must have been related to [his] race." Id. (quoting Lizardo v. Denny's Inc., 270 F.3d 94, 104 (2d Cir. 2001)).

## 1. **Light Duty**[12]

Croons advances two theories to argue that defendants' failure to assign him to light duty resulted from impermissible discrimination:  (1) he could have been assigned light duty in the Security Supervisor's office; or (2) he could have been appointed provisionally to another department at CNYPC.  Plaintiff supports these theories by asserting that white SHTAs received favorable treatment at CNYPC.  Pl.'s Mem. Opp'n 3-4, 7.

"A plaintiff may raise an inference of discrimination for purposes of making out a prima facie case by relying on the theory of disparate treatment; that is, by showing that [his] employer treated [him] less favorably than a similarly situated employee outside [his] protected group."  Risco, 868 F. Supp. 2d at 99 (citing Mandell v. Cnty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003)).  This requires a showing that the plaintiff is "similarly situated in all material respects" to the individual or individuals with whom he seeks to compare himself.  Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).  This determination "must be judged based on [ ] whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards."  Id. at 40; see also McGuiness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001) ("[W]here a plaintiff seeks to establish the minimal prima facie case by making reference to the disparate treatment of other employees, those employees must

---

[12]  Defendants appear to concede that CNYPC's ongoing failure to assign light duty, as opposed to certain discrete instances of when plaintiff requested it, constitutes an adverse employment action.  However, it is not entirely clear that it would be for purposes of this analysis.  See Henny v. New York State, 842 F. Supp. 2d 530, 552-53 and n.20 (S.D.N.Y. 2012) (expressing similar doubts about a plaintiff's exclusion from certain shifts); see also Edwards v. MetroNorth Commuter R.R. Co., No. 04-CV-1430, 2006 WL 2790402, at*5 (D. Conn. Sept. 27, 2006) ("Consideration of the . . . existence of an adverse employment action [ ] requires isolation of the specific actions claimed by the plaintiff.").  For purposes of this motion, it will be assumed that defendants' refusal to assign light duty is sufficient.

have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.").

Here, Croons purports to have identified Deb Vrooman, Danny Valieki, and Ray Mellor, three white employees who were afforded the light duty he was denied. Pl.'s Mem. Opp'n 7; Response to Rule 7.1 Stat. ¶ 64; Richardson Aff., ECF No. 42, ¶¶ 1-3. However, defendants provide sworn affidavits stating that although Ms. Vrooman was assigned light duty in the Security Supervisor's Office at one point, she was a senior SHTA at the time of her assignment and is therefore not similarly situated to plaintiff, a non-senior SHTA, for purposes of this analysis. See Collver Decl., ECF No. 39-34, ¶ 17. Plaintiff states that this distinction is merely a "pretext," but does not belabor the point by even attempting to identify any evidence in the record to support a claim that senior and non-senior SHTAs were treated identically when assigning light duty.[13] Pl.'s Mem. Opp'n 7.

Rather, Croons relies on Mr. Mellor—a fellow non-senior, non-supervisory white SHTA who was indisputably given light duty in the Security Supervisor's office—to support his theory of disparate treatment. Pl.'s Mem. Opp'n 7. Plaintiff supports his claims about Mr. Mellor through an affirmation by Keith Richardson, a former CNYPC employee. Richardson Aff., ECF No. 42, ¶¶ 1-3. Richardson identifies Mr. Mellor as having worked light duty during the relevant time period. Id. ¶ 9. Richardson also claims light duty was available for plaintiff in the Security Supervisor's office during the period in which he was denied such assignments. Id. ¶¶ 6-8. Defendants admit that Mr. Mellor worked light duty in the Security

---

[13] Likewise, plaintiff's only reference to Mr. Valieki is buried in a response to defendants' interrogatories and he does not identify any evidence to suggest that Mr. Valieki would be an appropriate comparator for purposes of this analysis. Indeed, plaintiff testified—on two separate occasions—that he could not think of anyone who obtained light-duty status during this period. Croons' Second Dep. 8-10.

Supervisor's office as a non-senior, non-supervisory SHTA at one point, but identify a policy change that precluded lower-level SHTAs from working in that office because of Union concerns regarding the confidentiality of patient records.[14]  Conley Decl. ¶ 6; Mellor Reply Decl. ¶ 6.

As an initial matter, a review of Richardson's affirmation shows that it is completely bereft of the sort of "concrete particulars" ordinarily required from sworn affidavits.[15]  See Bickerstaff, 196 F.3d at 451 ("[A]ffidavits must be based upon 'concrete particulars,' not conclusory allegations."); see also Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 615, 619 (2d Cir. 1996) ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial.").  For instance, Richardson asserts that light duty must, "at a minimum," have been available for Croons in the Security Supervisor's office.  Richardson Aff. ¶ 6.  However, he also admits that "I was not consulted about having Mr. Croons perform light duty" during the very same period of time for which he is makes this claim.  Id.  Likewise, although Richardson identifies Mr. Mellor as having been given a light duty assignment, he indicates that he is "uncertain as to the date that Mr. Mellor was given this assignment but it must have been within the last [five] years."  Id. ¶ 9.  Clearly,

_____

[14]  Defendants have also proffered a declaration from Mr. Mellor himself, which establishes that he worked light duty from December 1, 2006 to January 9, 2007.  Mellor Reply Decl., ECF No. 52-14, ¶ 3.  Mr. Mellor similarly attests to knowledge of the policy change regarding who could be assigned light duty in the Security Supervisor's office.  Id.  Finally, defendants have proffered Mr. Mellor's medical documentation confirming the time frame in which he performed light duty.  Collver Reply Decl., Exs. C-G, ECF No. 52-6.

[15]  Richardson also asserts that Michael Nicotera, a white SHTA, was out on disability leave between 2004 and 2008, but eventually returned to work.  Richardson Aff. ¶ 10.  However, this claim is offered without a specific date or even any supporting context to discern the circumstances regarding Mr. Nicotera's reinstatement.  Id.  Indeed, it is completely plausible to infer, in the absence of any guiding (or even contrary) evidence, that Mr. Nicotera returned via the same Civil Service route that plaintiff later pursued, but simply did so prior to the institution of New York's state-wide hiring freeze.  Defendants have indicated that Mr. Nicotera was reinstated on June 19, 2008, before the hiring freeze was instituted.  Bardo Reply Decl., ECF No. 52-3, ¶ 9.

Richardson's affirmation is not based on any personal knowledge of the facts and circumstances surrounding Mr. Mellor's light duty assignment, but rather mere speculation.[16]

Putting the sufficiency of Richardson's affidavit aside and construing those statements in Croons' favor for purposes of this motion, plaintiff still cannot establish a prima facie case of discrimination based on defendants' failure to assign him light duty.  Plaintiff identifies five dates when he claims to have presented the requisite medical documentation to CNYPC's HR Department, but claims that he was "always told" there was no light duty available.  Croons Aff., ECF No. 41, ¶ 8.

Despite extensive discovery in this case, plaintiff has not identified a single non-senior, non-supervisory SHTA given light duty between the period of his injury on June 1, 2007 and his termination on July 13, 2008.  Plaintiff has offered Mr. Mellor as the only other non-senior, non-supervisory white SHTA who was apparently ever afforded light duty in the Security Supervisor's office, and the medical evidence establishes that this was in the period before plaintiff's injury.  Even assuming defendants' claimed policy change is irrelevant and Mr. Mellor is an otherwise suitable comparator, the mere fact that a single white SHTA was given light duty in the Security Supervisor's office at some point in the past while plaintiff was later denied it, without anything more, does not suggest that defendants' failure to assign plaintiff light duty was motivated by some unlawful intent.  Defendants have repeatedly asserted that there was no light duty available during this time frame and the one instance in which there

---

[16]  This is not particularly surprising given that defendants have proffered evidence showing that Mr. Richardson was not even working at CNYPC during several of the days in question.  Collver Reply Decl., ECF No. 52-6 (and attached exhibits).

was a documented communication to Schoen regarding whether light duty was available for plaintiff during this time period seems, if anything, to confirm this assertion.[17]

Alternatively, Croons contends that he could have been appointed as a "provisional employee" to other positions within CNYPC that did not involve contact with violent patients while he recovered from his shoulder injuries. This argument is notably absent from plaintiff's opposition memorandum, but is rather found buried in his Response to defendants' Statement of Material Facts. <u>See</u> Response to Rule 7.1 Stat. ¶¶ 37-39. The entirety of plaintiff's argument on this point consists of citations to deposition excerpts from Bardo and Schoen.

This cited material reveals that CNYPC employs people in a number of positions that are similar to the job descriptions required by the SHTA title. Some of these positions do not require contact with potentially violent patients. Bosman Aff., Ex. 16, 5-7 ("Bardo Dep."). While a current SHTA can be provisionally appointed to these other positions at CNYPC pending completion of the specific exam requirements, or can even "change titles," these positions are tested and assigned separately within the Civil Service system. Bosman Aff., Ex. 14, 16 ("Schoen Dep."). Announcements for these opportunities are posted to all employees along with information explaining they may be eligible for certain positions. Bardo Dep. 7.

Essentially, Croons' citation to these two deposition excerpts seems based on his desire to have an adverse inference drawn—without any context, argument, or other supporting evidence—that the failure of supervisory individuals at CNYPC to offer or otherwise guide

---

[17] On January 25, 2008, Schoen responded to such a request and indicated that "no light duty available." Collver Decl., Ex. A.

plaintiff through the process of being provisionally appointed to a different Civil Service "title" should give rise to an inference of discriminatory intent.[18] However, this is woefully insufficient given that plaintiff had worked at CNYPC for over a year before his injury and had previously requested and received a light duty assignment. <u>See</u> Croons' First Dep. 31-34. Plaintiff appears to have been at least minimally familiar with facility procedures. Of course, plaintiff's contention would be bolstered by identifying one or more similarly situated employees who changed "titles" or were appointed provisionally while he was denied those opportunities, but he has not done so. The sparse deposition statements cited by plaintiff, even viewed in the larger context of plaintiff's other allegations, do not support an inference of discrimination. Plaintiff has therefore failed to carry even his "minimal" burden of identifying "evidence of circumstances that would permit an inference of discriminatory motive" arising from defendants' failure to assign him light duty. <u>Risco</u>, 868 F. Supp. 2d at 98-99.

## 2. **Termination**

Croons' second theory in support of his discrimination claims concerns his allegedly wrongful termination. Assuming plaintiff carried his initial burden of establishing a prima facie case with respect to this theory, defendants' proffered reason—that plaintiff was terminated pursuant to New York Civil Service Law § 71—sufficiently rebuts it.

"An employer's decision to terminate an employee pursuant to Civil Service Law § 71 is a legitimate, non-discriminatory reason for an employee's termination." <u>Meyer v. William Floyd Union Free Sch. Dist.</u>, 07-CV-2524 JS ETB, 2008 WL 4415271 (E.D.N.Y. Sept. 24,

---

[18] Plaintiff also includes an affirmation from LaQuan Johnson, a former CNYPC employee who was provisionally appointed as a Secure Care Treatment Aide ("SCTA") after seeking a transfer to CNYPC. ECF No. 43. Mr. Johnson's affirmation tells a story about events that allegedly occurred to him during February of 2013. It has absolutely no connection to plaintiff's case.

2008); <u>Bresloff-Hernandez v. Horn</u>, No. 05-CV-0384, 2007 U.S. Dist. LEXIS 71257, at *20 (S.D.N.Y. Sept. 21, 2007) ("No presumption of discrimination arises when an employer makes a decision explicitly provided for by the Civil Service Law."); <u>Hatter v. Fulton</u>, 92 Civ. 6065, 1997 WL 411623, at *7 (S.D.N.Y. July 21, 1997), <u>aff'd sub nom.</u>, <u>Hatter v. New York City Housing Auth.</u>, 165 F.3d 14 (2d Cir. 1998) (finding termination pursuant to § 71 to be a valid, non-discriminatory reason for termination).

It is undisputed that plaintiff did not work any days at CNYPC during the one-year period immediately following his June 1, 2007 injury and therefore his one-year medical leave under § 71 was unquestionably exhausted when he was terminated effective July 13, 2008. Plaintiff fails to respond to this argument in his opposition brief and thus provides no guidance as to how his termination pursuant to a Civil Service provision could conceivably be a pretext for unlawful discrimination, especially since defendants have offered evidence showing that such terminations were routine. <u>See, e.g.</u>, Bardo Decl., Ex. F, ECF No. 39-21 (listing terminated SHTAs). Plaintiff has failed to produce "enough evidence to support a rational finding that the defendant's explanation for the adverse action is actually a pretext to disguise discrimination." <u>Barounis</u>, 2012 WL 6194190, at *6 (citations omitted).

Accordingly, Counts One, Two, Seven, and Eight will be dismissed.

**C. Retaliation** (Counts Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen)

Croons' retaliation claims are brought pursuant to Title VII (Count Nine), the ADA (Count Ten), the Rehabilitation Act (Count Eleven), NYSHRL (Count Twelve), and 42 U.S.C. §§ 1981 and 1983 (Counts Thirteen and Fourteen). Plaintiff contends that CNYPC's failure to reinstate him despite his medical clearance was retaliation for filing his DHR complaint and pursuing this federal litigation. Pl.'s Mem. Opp'n 9. Defendants contend that CNYPC was not

aware of the Clearance Letter until this litigation commenced, but that the state-wide hiring freeze would have precluded CNYPC from immediately reinstating plaintiff.  Plaintiff argues that this assertion is a falsehood because CNYPC was made aware of the Clearance Letter, at the very latest, during the two-party conference with DHR on December 1, 2009.

Croons various retaliation claims are analyzed under the same McDonnell Douglas burden-shifting framework discussed above.[19]  Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003) (Title VII); Treglia, 313 F.3d at 719 ("Claims for retaliation [under the ADA, Rehabilitation Act, and NYSHRL] are analyzed under the same burden-shifting framework established for Title VII cases"); Weixel v. Bd. of Educ. of the City of New York, 287 F.3d 138, 148-49 (2d Cir. 2002) (elements of a retaliation claim under Rehabilitation Act are same as under the ADA); Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000) (applying ADA analysis to plaintiff's retaliation claim under both ADA and NYSHRL); Jones v. Onondaga Cnty. Res. Recovery Agency, No. 5:11-CV-113 (FJS/TWD), 2013 WL 5346815, *11 (N.D.N.Y. Sept. 23, 2013) (Scullin, S.J.) (applying burden-shifting framework to §§ 1981 and 1983 retaliation claims).

To establish a prima facie case of retaliation, a plaintiff must show that:  (1) he engaged in a protected activity; (2) the employer was aware of this activity; (3) the employer took an adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action.  Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013) (citation

---

[19]  The NYSHRL uses a similar burden-shifting framework, but "drops the requirement that retaliation claimants demonstrate that they suffered a materially adverse action."  Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc., 814 F. Supp. 2d 355, 366 (S.D.N.Y. 2011).

omitted).[20]  "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." Id. (quoting Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001)).  If the employer demonstrates a legitimate, non-discriminatory reason, then "[t]he burden shifts . . . back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." Id.

Here, it is not readily apparent how plaintiff seeks to establish a causal relationship between his DHR complaint or federal lawsuit and CNYPC's failure to reinstate him after February 11, 2009, because those events occurred, respectively, on June 26, 2009 and October 25, 2010.  "Proof of a causal connection can be established indirectly by showing that the protected activity was followed closely by" the adverse employment action or by evidence of disparate treatment of fellow similarly situated employees, Davis v. State Univ. of New York, 802 F.2d 638, 642 (2d Cir. 1986), or directly through evidence of retaliatory animus directed against a plaintiff by the defendant.  DeCintio v. Westchester Cnty. Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987).

Croons suggests that CNYPC was hostile to his efforts to return to work following his termination on July 13, 2008, claiming that Schoen and her employees simply told him "that it was too late and there was nothing they could do" and that he was "not advised" that he could be medically cleared to return to work.  Croons Aff., ¶ 15.  But these statements are not

---

[20]  The Supreme Court has recently held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test . . . . [t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Tex. Southwestern Med. Ctr. v. Nassar, —U.S.—, 133 S.Ct. 2517, 2533 (2013). However, the but-for causation standard "does not alter the plaintiff's ability to demonstrate causation at the prima facie stage on summary judgment." Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 845 (2d Cir. 2013).

direct evidence of retaliatory animus, and it is undisputed that plaintiff was not medically cleared until February 11, 2009.  See Clearance Letter.  Even then, over four additional months elapsed before plaintiff filed his DHR complaint on June 26, 2009.  In any event, these claims are undermined by plaintiff's prior deposition testimony, where he states that he took it upon himself to go "back to the employee handbook and read through it" after he was told by CNYPC's HR Department that they could not assist him following his termination. Croons' First Dep. 65-67.  Plaintiff was not hopelessly adrift in the harsh post-termination actions of defendants' employees, as he suggests, but rather testified that he learned about the required reinstatement procedures in the employee handbook at some point before December of 2008.  Id. 66.

The inverted temporal relationship plaintiff describes here is insufficient to establish the requisite causal relationship under any measure.  Assuming defendants were disinclined to reinstate plaintiff despite his medical clearance based on some impermissible animus, it was not causally related to the protected activity plaintiff identifies—his decision to file an administrative complaint with DHR four months after CNYPC's continued refusal to reinstate him, or even his decision to file a federal lawsuit nearly twenty months later.  See Stephan v. West Irondequoit Cent. Sch. Dist., 450 Fed. Appx. 77, 80 (2d Cir. 2011) (summary order) (finding no causal connection where the adverse employment action occurred before the protected activity).

Even assuming, arguendo, defendants' continued failure to reinstate Croons once he filed a DHR complaint can somehow be transmogrified into a sufficient causal relationship to establish a prima facie case of retaliation, defendants have articulated a legitimate, non-retaliatory reason for doing so:  the state-wide hiring freeze.  See, e.g.,  Westbrook v.

City Univ. of New York, 591 F. Supp. 2d 207, 229-30 (E.D.N.Y. 2008) (finding that a hiring freeze was a "legitimate business rationale" for an employer's action); Wilburn v. Fleet Fin. Grp., Inc., 170 F. Supp. 2d 219, 240 (D. Conn. 2001) (finding that defendant's evidence of a hiring freeze was a legitimate, nondiscriminatory reason for purposes of the burden-shifting analysis).

Thus, Croons would still retain the burden of establishing, through either direct or circumstantial evidence, that CNYPC's failure to reinstate him was, in fact, motivated by some retaliatory animus. "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013) (collecting cases). Plaintiff attempts to do this by claiming that defendants falsely asserted that they were unaware of his medical clearance until this litigation commenced. However, plaintiff's own deposition testimony indicates that he initially "held onto" this medical clearance letter and did not bring it to anyone at the facility. Croons' First Dep. 72-75. Even then, plaintiff could have provided evidence that other SHTAs had been reinstated during the hiring freeze to claim that the hiring freeze was an attempt to conceal some retaliatory motive. "From such discrepancies a reasonable juror could infer that the explanations given by [defendants] were pretextual." Zann Kwan, 737 F.3d at 846 (citations omitted). But plaintiff has not done so, and it appears that no other SHTAs were hired or reinstated by CNYPC from July 31, 2008 until after the hiring freeze ended around June 14, 2012. Bardo Decl. ¶ 14.

Finally, Croons contends that he has additional support for his argument that defendants' refusal to reinstate him was motivated by retaliatory animus. In his sworn affidavit, plaintiff states:

> Shortly after the December 1, 2009 conference, Ms. Kennedy and I had a conversation and she stated to me point blank, "If you're willing to drop your case, I can get you're [sic] job back." She indicated that she had been in contact with the facility. I retained an attorney after Ms. Kennedy relayed what I understood to be the facility's offer and after my attorney contacted her, her demeanor changed. When I contacted her myself after Ms. Bosman initiated contact, she told me simply "[w]e can't get you're [sic] job back."

Croons Aff., ¶ 22. Plaintiff claims that the "the Court must accept [this statement] as true for purposes of this motion" and that it "create[s] genuine issues of material fact." Pl.'s Mem. Opp'n 9. Defendant contends that this statement is hearsay because Ms. Kennedy, an employee of DHR, is not authorized to speak on behalf of CNYPC. Kennedy Decl., ECF No. 39-46.

Notwithstanding Croons' improper understanding of his burden at the summary judgment stage, plaintiff failed to establish the requisite causal connection between the adverse employment action and his protected activity to even make out a prima facie case, as discussed above. In any event, plaintiff's identification of a single, self-serving, vague hearsay statement allegedly made by someone who is not even a CNYPC employee, but rather a representative of the non-party DHR, would be insufficient to raise a triable issue of fact. In sum, plaintiff has failed to proffer sufficient evidence to permit a trier of fact conclude that a causal relationship existed between his protected activity and the adverse actions as necessary to sustain his prima facie case.

Accordingly, Counts Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen will be dismissed.

### D. **Disability Claims** (Counts Three, Four, Five, and Six)

Croons' disability discrimination claims are brought pursuant to Titles I and II of the ADA (Counts Three and Four), the Rehabilitation Act (Count Five), and the NYSHRL (Count Six). Defendants contend that plaintiff's injury did not constitute a disability as it is defined under the federal statutes. Def.'s Mem. 6. Plaintiff argues that the ADA does not foreclose "temporary" disabilities from coverage and presses a "regarded as" theory of recovery in his opposition brief. Pl.'s Mem. Opp'n 11-12.

As an initial matter, defendants argue Croons' Title II ADA claim (Count Four) fails as a matter of law based on the Second Circuit's recent holding that "[a] public employee may not bring a Title II claim against his or her employer, at least where the defendant employer employs fifteen or more employees." Def.'s Mem. 19 (citing Mary Jo C. v. N.Y. State & Local Retirement System, 707 F.3d 144, 171 (2d Cir. 2013), cert. dismissed, —U.S.—, 133 S. Ct. 2823 (2013)). Plaintiff does not respond to this argument, but it is undisputed that CNYPC is part of OMH, an agency of the Executive Branch of the New York State Government. Rule 7.1 Stat. ¶ 1. As such, it is a public employer. See 42 U.S.C. § 12131(1) (defining "public entity" as "any State or local government [or agency thereof]"). Likewise, it is undisputed that CNYPC's Security Department, standing alone, employs "approximately 188 people." Rule 7.1 Stat. ¶ 6; see also Sawyer Decl., ECF No. 39-14, ¶ 5 (noting that there were approximately 700 staff members at CNYPC). Therefore plaintiff, as a public employee, may not pursue his Title II ADA claim against his employer, a public entity subsumed within OMH employing fifteen or more people. Mary Jo C., 707 F.3d at 171 ("[W]e conclude that the

[ADA] unambiguously limits employment discrimination claims to Title I."). Accordingly, Count Four will be dismissed.

Croons' remaining claims of discrimination under the ADA, the Rehabilitation Act, and the NYSHRL are all analyzed under the now-familiar McDonnell Douglas burden-shifting framework.[21] Petrone v. Hampton Bays Union Free Sch. Dist., 03-CV-4359 SLT ARL, 2013 WL 3491057, at *16 (E.D.N.Y. July 10, 2013). While the elements of a prima facie case differ depending on whether plaintiff's Amended Complaint is construed as a "failure to accommodate" claim or as a "discriminatory discharge" claim, both theories require that he initially show he was disabled within the meaning of the statutes. Id. Plaintiff's theory seems to be that he was substantially limited in the major life activities of "working" or "lifting," but it is difficult to be certain because his entire argument on this first point is that his disability "lasted for more than a year and limited his ability to lift objects." Pl.'s Mem. Opp'n 12.

To establish a disability, "plaintiff must first show that [he] suffers from a physical or mental impairment. Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a 'major life activity.' Third, [ ] plaintiff must show that [his] impairment 'substantially limits' the major life activity previously identified." Weixel, 287 F.3d at 147 (citations omitted); see also Villanti v. Cold Spring Harbor Cent. Sch. Dist., 733 F. Supp. 2d 371, 377-78 (E.D.N.Y. 2010) (discussing the three-step test); Reilly v. Revlon, Inc.,

---

[21] Although disability discrimination claims under federal and state law are analyzed similarly, the definition of disability is broader under the NYSHRL.. Levine v. Smithtown Cent. Sch. Dist., 565 F. Supp. 2d 407, 428 (E.D.N.Y. 2008) (citations omitted). A disability under the NYSHRL is one that either: (1) prevents the exercise of a normal bodily function; or (2) is "demonstrable by medically accepted clinical or laboratory diagnostic techniques. Id. (citation omitted). Further, "it is not required that the impairment substantially limit that individual's normal activities." Id. (citations omitted). In other words, any "medically diagnosable impairment" is a disability under the NYSHRL. Barr v. N.Y.C. Trans. Auth., 2002 WL 257823, at *8 (E.D.N.Y. Feb. 20, 2002).

620 F. Supp. 2d 524, 439 (S.D.N.Y. 2009) (same). "In addition, . . . the identified major life activity must be 'of central importance to daily life.'" Weixel, 287 F.3d at 147.

"According to the EEOC regulations, 'substantially limit[ed]' means '[u]nable to perform a major life activity that the average person in the general population can perform'; or '[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity.'" Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 195-96 (2002) (quoting 29 C.F.R. § 1630.2(j)).[22]  In making this determination, a court should also consider: (1) the nature and severity of the impairment; (2) the duration and expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long-term impact of or resulting from the impairment.  § 1630.2(j)(2).

Both "lifting" and "working" are considered major life activities for purposes of the federal statutes. McDonald v. City of New York, 786 F. Supp. 2d 588, 607 (E.D.N.Y. 2011). But to survive summary judgment on the issue of whether a plaintiff's condition substantially limits these activities, a plaintiff "must not only (1) describe how those life activities are limited, but must also (2) support this description with competent medical evidence." Villanti,

---

[22]   This case has been overruled by the amendments to the ADA.  Prior to January 1, 2009, the ADA defined "disability" as:  "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." EEOC v. J.B. Hunt Transp., Inc., 321 F.3d 69, 74 (2d Cir. 2003) (quoting 42 U.S.C. § 12102(2) (1991)), superseded by 42 U.S.C. § 12102(3) (2009) (amending ADA to state that "[a]n individual meets the requirement of being regarded as having [a disability] . . . whether or not the impairment limits or is perceived to limit a major life activity") (internal quotation marks omitted)).  However, courts in the Second Circuit use the disability standard in effect at the time the alleged discriminatory conduct occurred. Ugactz v. United Parcel Serv., Inc., 10-CV-1247 (MKB), 2013 WL 1232355, at *9 n. 18 (E.D.N.Y. Mar. 26, 2013) (collecting cases).

733 F. Supp. 2d at 380 (citing <u>Heilweil v. Mount Sinai Hospital</u>, 32 F.3d 718, 722-23 (2d Cir. 1994)).

Here, Croons suffered an injury to his neck and shoulder on July 1, 2007.  Each of his various examining physicians cleared plaintiff to return to work "immediately" provided he limited the weight he lifted with his right shoulder and stayed out of an environment where he may have interactions with violent people.  <u>See generally</u> Medical Records.  Indeed, the constant refrain of the medical documentation is that this injury was "moderate," "temporary," "partial," and "mild."  <u>Id</u>.  While these limitations obviously prevented him from working as a full duty SHTA at CNYPC, there is no evidence in the record to support a conclusion that he was unable to perform a broad range of jobs in various classes compared to an average person.  <u>See</u> 29 C.F.R. § 1630.2(j)(3)(i) ("A person is only "substantially limited" in working if he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.").  Likewise, the lifting limitations on plaintiff's right shoulder are insufficient to constitute disability under these statutes.  <u>Harris v. Franziska Racker Ctrs., Inc.</u>, 340 F. Supp. 2d 225, 236 (N.D.N.Y. 2004) (McCurn, S.J.) (finding that a twenty-pound lifting limitation is insufficient); <u>Varre v. City of Syracuse</u>, No. 96-CV-1792, 2000 WL 270966, at *5 (N.D.N.Y. Mar. 6, 2000) (Munson, S.J.) (finding ten-pound lifting limitation insufficient and collecting cases).

Finally, Croons has fully recovered from his injury and the medical evidence does not describe any long-term limitations.  Although the injury lasted "more than a year," plaintiff has since returned to work as an SHTA without limitations.  <u>See</u> <u>Huskins v. Pepsi Cola of Odgensburg Bottlers, Inc.</u>, 180 F. Supp. 2d 347, 351-52 (N.D.N.Y. 2001) (Munson, S.J.)

(noting that a disability under the ADA "does not include temporary medical conditions, even if those conditions require extended leaves of absence from work" and collecting cases).

Alternatively, Croons contends that defendants perceived him as "being substantially limited in the major life activity of working" as evidenced by defendants' refusal to permit him to perform even administrative or secretarial work in a light duty capacity. Pl.'s Mem. Opp'n 12.

While it is true that "[a] plaintiff is also disabled within the meaning of the ADA if he is 'regarded' by his employer as having a physical or mental impairment that substantially limits a major life activity," Capobianco v. City of New York, 422 F.3d 47, 57 (2d Cir. 2005), this argument has no merit. Croons' medical reports, which he claims he delivered to CNYPC's HR Department on numerous occasions requesting light duty, repeatedly indicate that he could return to work immediately provided he was not in a violent environment. The record includes evidence that on at least one occasion, the HR Department contacted Collver to inquire whether light duty was available. Collver Decl., Ex. A. Although Collver responded that "no light duty [was] available," this statement does not militate in favor of the conclusion that plaintiff was somehow regarded as substantially limited from working in a broad range of jobs as contemplated by these federal statutes. There is no evidence that secretarial or administrative light duty assignments were given to other non-senior, non-supervisory SHTAs during the relevant time period such that an inference could be drawn that defendants regarded plaintiff's light duty clearance as somehow different or more restrictive than that of other SHTAs seeking the same light duty assignments. Likewise, there is no evidence of any employees, supervisory or otherwise, making any remarks to suggest that he was regarded within the facility as disabled within the meaning of the statutes. See Stephan, 450 Fed.

Appx. at 80 (discussing comments by employees); <u>Petrone</u>, 2013 WL 3491057, at *37 (finding a series of comments regarding a plaintiff's condition sufficient to permit an inference that he was "regarded as" disabled). Rather, plaintiff's entire case is based on the fact that he did not receive light duty and was then terminated pursuant to New York Civil Service Law § 71, something that the evidence establishes routinely happens at CNYPC. Bardo Decl., Ex. F, ECF No. 39-21. In sum, plaintiff has failed to proffer sufficient evidence to permit a trier of fact to conclude that he was disabled, or "regarded as" disabled, during the relevant time period as necessary to sustain a prima facie case.

Croons' state law disability claim fares no better. Even assuming, arguendo, that plaintiff is able to sustain a prima facie case of disability discrimination under the considerably broader definition of "disability" contemplated by the NYSHRL, defendants have proffered a non-discriminatory reason for plaintiff's termination. Specifically, that his cumulative one-year medical absence gave rise to termination under New York Civil Service Law § 71. Plaintiff has not produced any evidence to carry his burden of demonstrating that the proffered reason is a pretext. <u>See</u> <u>McBride v. BIC Consumer Prods. Mfg. Co.</u>, 583 F.3d 92, 96 (2d Cir. 2009). Indeed, despite directing his NYSHRL claim at the individual defendants, he provides little to no guidance as to how any of their acts are related to his failure to receive light duty or his eventual discharge.

Accordingly, Counts Three, Five, and Six will be dismissed.[23]

---

[23] Croons also claims, apparently for the first time, that the "forty-five" day requirement established as part of the MOU between the Union and New York State is a "100% healed" policy that violates the ADA. Pl.'s Mem. Opp'n 15. This argument is refuted by the plaint language of the MOU, which merely requires an injured employee to furnish documentation indicating that he is 50% or less disabled and is expected to return to work in the near future. In any event, plaintiff is not disabled within the meaning of the ADA and further discussion on this point is unnecessary.

## IV. CONCLUSION

Despite viewing the record in the light most favorable to Croons, the non-movant here, there is insufficient evidence for a rational trier of fact to find in his favor. See Treglia, 313 F.3d at 719. Plaintiff has not identified any circumstances surrounding either his failure to receive light duty or his termination sufficient to give rise to an inference of discriminatory intent. Even under the more generous definition of disability found in the NYSHRL, plaintiff has failed to carry his burden of showing any evidence of pretext such that his claim can survive summary judgment. Likewise, his failure to draw a causal connection between his protected activity and his allegations of retaliation are insufficient to establish a prima facie case. In any event, defendants have identified legitimate reasons for the adverse actions plaintiff suffered—Civil Service Law § 71 and the state-wide hiring freeze.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED; and

2. Plaintiff's Amended Complaint is DISMISSED; and

The Clerk of the Court shall enter a judgment and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: May 12, 2014.
     Utica, New York.